**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARINA TSAPELAS and BRIANNA JUNOT, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GARZA FOOD VENTURES, LLC d/b/a SIETE FAMILY FOODS,<br><br>Defendant. | Civil Action No.: 1:26-cv-5571<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Marina Tsapelas and Brianna Junot ("Plaintiffs"), on behalf of themselves and all others similarly situated, bring this class action against Defendant Garza Food Ventures LLC d/b/a Siete Family Foods ("Siete" or "Defendant"), based on Siete's false and deceptive advertising and labeling of its avocado oil chip products. Plaintiffs make the following allegations based on the investigation of their counsel, and on information and belief, except as to allegations pertaining to Plaintiffs individually, which are based on personal knowledge.

## NATURE OF THE ACTION

1. This is a class action lawsuit concerning Defendant's false and misleading labeling and marketing on its Kettle Cooked Sea Salt Potato Chips (the "Potato Product") and its Maíz Sea Salt Corn Tortilla Chips (the "Corn Product") (collectively, the "Products") manufactured, sold, and produced by Defendant, which prominently and unequivocally represent they are "Made with Avocado Oil" (the "Avocado Oil Representation").

2. The Avocado Oil Representation appears on the front of every package for the Products. The Avocado Oil Representation is reinforced by the ingredient statement on the back

label of each of the Products, which states "Avocado Oil" as the only oil in the Products and declares no other oil.

3. Based on the Avocado Oil Representation, reasonable consumers are misled to believe that the oil used to make the Products is avocado oil, and that the Products are not made with other, cheaper oils. However, unbeknownst to consumers, the Products are not made with avocado oil.

4. Peer-reviewed scientific testing conducted by food scientists at the University of California, Davis ("UC Davis")—published in July 2026 in the journal *Applied Food Research*—extracted the oil from the Products and analyzed their fatty acid and sterol composition against the internationally recognized compositional standards for authentic avocado oil codified in the Codex Alimentarius. The UC Davis researchers tested two separate production lots of each Product, and analyzed each lot in duplicate. Every sample of every Product was classified as compositionally inconsistent with authentic avocado oil. Instead, the oil recovered from the Products bore the compositional signature of cheap, refined vegetable (seed) oils. The consistent absence of avocado oil and presence of cheap oils in the tested Products reveals a widespread issue in Defendant's manufacturing processes. Because all Products at issue claim to be made with avocado oil, the avocado oil substitution and/or dilution with cheap oils occurred at Defendant's manufacturing facilities, and the absence of avocado oil affects all batches and lots of Defendant's Products, including Plaintiffs' purchases.

5. Avocado oil is a premium ingredient, and consumers pay a premium for products made with it. Plaintiffs and Class members paid that premium for the Products. Had they known the truth—that the Products are not made with avocado oil, or that the Products contain other, undisclosed cheap, refined seed oils—they would not have purchased the Products, or

would have paid substantially less for them.

6. Accordingly, Plaintiffs bring claims individually and on behalf of similarly situated purchasers of Defendant's Products for violations of (i) New York's General Business Law ("GBL") § 349; (ii) New York's General Business Law § 350; (iii) intentional misrepresentation; (iv) breach of express warranty; (v) breach of implied warranty; and (vi) unjust enrichment.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005 ("CAFA"), because there are more than 100 Class Members, the aggregate claims of all members of the proposed Classes exceed $5,000,000.00, exclusive of interest and costs, and at least one Class Member is a citizen of a state different from Defendant.

8. This Court has specific personal jurisdiction over Defendant because Defendant purposefully availed itself of the benefits of this District by selling the Products to consumers in New York, including selling the Products to Plaintiffs while in New York. In addition, a substantial portion of the events giving rise to Plaintiff Tsapelas's claims occurred in this District.

9. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial portion of the acts and events giving rise to the claims occurred in this District and Plaintiff Tsapelas resides in this District.

## PARTIES

***Plaintiffs***

10. Plaintiff Marina Tsapelas is a citizen and resident of the State of New York. She

currently resides in Douglaston, New York.

11. Plaintiff Tsapelas has purchased Defendant's Products on various occasions during the class period. Most recently, on or about June 2026, she purchased Defendant's Kettle Cooked Sea Salt Potato Chips Product through Amazon.com and Whole Foods for delivery to her residence in Douglaston, New York.

12. Plaintiff Tsapelas purchased the Products specifically because they were advertised as being made with avocado oil. She saw and read the words "Made with Avocado Oil" on the front of the packages before buying them, and she reviewed the ingredient statements, which listed avocado oil as the only oil in the Products. Plaintiff Tsapelas reasonably believed, based on the Avocado Oil Representation, that the oil used to make the Products was avocado oil, and did not believe that the Products contained any other oils.

13. Plaintiff Tsapelas intentionally avoids seed oils and therefore purchased the Products in significant part for that reason—because they were represented as being made with avocado oil rather than with the refined seed oils used in conventional snack foods. The Avocado Oil Representation was material to, and a substantial factor in, her decision to purchase the Products.

14. Plaintiff Tsapelas relied on the Avocado Oil Representation, meaning she took it into consideration when making her decision to purchase the Products, and she would not have purchased the Products, or would have paid less for them, had she known the Products were either substituted or diluted with other oils. Thus, Plaintiff Tsapelas has suffered injury in fact and lost money as a result of Defendant's misleading, false, unfair, and deceptive practices, as alleged herein.

15. Plaintiff Tsapelas will be unable to rely on the Products' Avocado Oil Representation in the future, as she will be unable to determine the true composition of the oil in the Products absent scientific testing, and so will be unable to purchase the Products in the future, although she would like to. Plaintiff Tsapelas remains interested in purchasing snack products that are made with avocado oil, intends to purchase them in the future, and would consider purchasing the Products in the future if Defendant ensured that the Avocado Oil Representation was accurate and truthful.

16. Plaintiff Brianna Junot is a citizen and resident of the State of New York. She currently resides in Dansville, New York.

17. Plaintiff Junot has purchased Defendant's Products on various occasions during the class period. Most recently, in June 2026, she purchased Defendant's Maíz Sea Salt Corn Tortilla Chips Product in person at a Wegmans supermarket in New York. Plaintiff Junot has also purchased the Corn Product through other channels such as from Amazon.com, for delivery to her residence in Dansville, New York.

18. Plaintiff Junot purchased the Products specifically because they were advertised as being made with avocado oil. She saw and read the words "Made with Avocado Oil" on the front of the packages before buying them, and she reviewed the ingredient statements, which listed avocado oil as the only oil in the Products. Plaintiff Junot reasonably believed, based on the Avocado Oil Representation, that the oil used to make the Products was avocado oil, and did not believe that the Products contained any other oils.

19. Plaintiff Junot intentionally avoids seed oils and therefore purchased the Products in significant part for that reason—because they were represented as being made with avocado

oil rather than with the refined seed oils used in conventional snack foods. The Avocado Oil Representation was material to, and a substantial factor in, her decision to purchase the Products.

20. Plaintiff Junot relied on the Avocado Oil Representation, meaning she took it into consideration when making her decision to purchase the Products, and she would not have purchased the Products, or would have paid less for them, had she known the Products were either substituted or diluted with other oils. Thus, Plaintiff Junot has suffered injury in fact and lost money as a result of Defendant's misleading, false, unfair, and deceptive practices, as alleged herein.

21. Plaintiff Junot will be unable to rely on the Products' Avocado Oil Representation in the future, as she will be unable to determine the true composition of the oil in the Products absent scientific testing, and so will be unable to purchase the Products in the future, although she would like to. Plaintiff Junot remains interested in purchasing snack products that are made with avocado oil, intends to purchase them in the future, and would consider purchasing the Products in the future if Defendant ensured that the Avocado Oil Representation was accurate and truthful.

***Defendant***

22. Defendant Garza Food Ventures, LLC, doing business as Siete Family Foods ("Siete"), is a Texas limited liability company with its headquarters and principal place of business in Austin, Texas.

23. Siete manufactures, markets, and distributes the Products, among other products, throughout the United States, including in New York. At all times relevant to this Complaint, Defendant has advertised, marketed, distributed, or sold the Products to consumers throughout the United States and New York, including in this District.

# FACTUAL ALLEGATIONS

## A. Defendant's Products

24. Defendant markets itself as a family-founded, "better-for-you" Mexican-American food brand whose products are made with purported simple, high-quality ingredients. Defendant's Potato Product is advertised as being made "with just the basics—avocado oil and sea salt." Defendant states publicly that its "tortilla chips, maíz totopos and potato chips are fried in avocado oil."[1]

25. Defendant's Products are positioned to appeal to consumers who seek out premium ingredients and who deliberately avoid the refined vegetable and seed oils used in conventional snack foods. Defendant knows that consumers care about, and rely on, the claims that it makes about the ingredients in its Products—and in particular about the oil used to make them.

26. Defendant is directly involved in the manufacturing, sale, and distribution of the Products, and is responsible for the advertising, marketing, trade dress, and packaging of the Products. Defendant developed, marketed, and sold the Products during the class period. Defendant is also directly responsible for ensuring that its Products' oil content conforms to the advertised claims. Thus, Defendant's failure to ensure at its manufacturing facilities that its Products actually contained avocado oil affects all batches and lots of Defendant's Products.

27. Defendant has labeled, advertised, distributed, and sold the Products throughout the United States, including in New York, during the statute of limitations period. The Products are sold at national and regional grocery retailers—including, among others, Whole Foods Market, Sprouts Farmers Market, Wegmans, Target, Kroger and its banners, Albertsons/Safeway

[1] https://sietefoods.com (last visited Aug. 13, 2026).

and its banners, Walmart, and Costco—and directly to consumers through Defendant's own website, sietefoods.com, and through online retailers including Amazon.com.

28. On October 1, 2024, PepsiCo, Inc., announced an agreement to acquire Siete for $1.2 billion. PepsiCo completed the acquisition on January 17, 2025. Siete is now a wholly owned subsidiary of PepsiCo, Inc.[2] The acquisition was part of PepsiCo's attempt to expand its portfolio to include "positive choices for consumers" through "convenient foods and drinks that are nutritious, enjoyable, and fit consumers' lifestyles."[3]

**B. The Avocado Oil Representation Is False and Misleading**

29. The Products consist of Defendant's Kettle Cooked Sea Salt Potato Chips and Defendant's Maíz Sea Salt Corn Tortilla Chips.

[INTENTIONALLY BLANK]

---

[2] *PepsiCo Completes Acquisition of Siete Foods*, PepsiCo Newsroom (Jan. 17, 2025), https://www.pepsico.com/en/newsroom/press-releases/2025/pepsico-completes-acquisition-of-siete-foods.

[3] *Id.*

30. The Avocado Oil Representation—"Made with Avocado Oil"—is prominently displayed on the front label on all Products, as depicted in the following representative image:




***Figure 1***

31. On the Potato Product, Defendant prominently places the Avocado Oil Representation in multiple places on the front of the packaging. The front label for the Potato Product depicts an avocado, visually reinforcing the representation.




*Figure 2*

32. The Avocado Oil Representation conveys the unequivocal message that the oil used to make the Products is avocado oil.

33. The oil in the Products is not a trace or incidental ingredient. It is the second-listed ingredient by weight in the Products, and it is the medium in which the Products are

purportedly cooked. Defendant states that its potato chips and tortilla chips are "fried in avocado oil."

34. The Avocado Oil Representation is reinforced—not qualified—by the back label of each Product. The ingredient statement for the Potato Product reads, in its entirety: "Potatoes, Avocado Oil, Sea Salt."




***Figure 3***

35. The ingredient statement for the Corn Product reads, in relevant part: "Nixtamalized Corn Blend (Organic White Corn, Organic Yellow Corn, Lime), Avocado Oil, Sea Salt," and includes a section answering "Why Avocado Oil?"




***Figure 4***




***Figure 5***

36. Each Product declares exactly one oil on its packaging—"Avocado Oil." Neither Product declares any other oil, any oil blend, or any "and/or" oil statement. Federal regulations require that each ingredient in a packaged food be declared "by its common or usual name." 21 C.F.R. § 101.4(a)(1). A reasonable consumer who reads "Made with Avocado Oil" on the front of the package, and then finds "Avocado Oil"—and only "Avocado Oil"—on the ingredient statement, reasonably understands that the oil in the Products is avocado oil.

37. Unfortunately for Plaintiffs and similarly situated consumers, Defendant's Products are not made with avocado oil. As set forth in detail below, peer-reviewed scientific testing establishes that the oil from the Products is not compositionally consistent with authentic avocado oil, and instead exhibits the compositional profile of undisclosed cheaper, refined vegetable oils. The Avocado Oil Representation is therefore false and misleading.

**C. The Avocado Oil Representation Is Material to Consumers**

38. The Avocado Oil Representation is material—*i.e.*, it is important to consumers with respect to their decision to purchase the Products.[4]

[4] For instance, a 5.5 oz. bag of Siete Kettle Cooked Sea Salt Potato Chips costs approximately $4.55 to $5.49, or roughly $0.83 to $1.00 per ounce, and a 7.5 oz. bag of Siete Maíz Sea Salt Corn Tortilla Chips costs approximately $4.99 to $6.49, or roughly $0.67 to $0.87 per ounce. By

39. Avocado oil is well known to be one of the healthiest food oils. For example, studies have indicated that compounds in avocado oil may help protect the liver, lower blood pressure and LDL cholesterol, and reduce osteoarthritis-related joint pain, post-meal blood sugar, and total cholesterol levels.[5] It is also high in monounsaturated fat, which is considered more heart healthy than saturated fat, while being slightly more stable than the polyunsaturated fats typically found in vegetable oils.[6] Avocado oil is also in high demand because it has the highest smoke point of all plant-based food oils, and is thus more desirable for high-heat applications such as frying.[7]

40. Each of these qualities, among others, motivates consumers to pay a premium price for products made with avocado oil as compared to products made with other food oils like canola, corn, peanut, safflower, soybean, and sunflower oil.

41. A substantial and growing number of consumers specifically seek to avoid refined vegetable and seed oils in their diets, and choose products made with avocado oil for that reason. For those consumers, a front-of-package claim that a food is "Made with Avocado Oil" is not merely a preference—it is the reason the product is purchased at all.

42. Regardless of whether consumers believe that avocado oil is superior to other oils or possesses the qualities described above, the question whether the oil in a food product is the oil that the label says it is—rather than a cheaper oil substituted for it—is material to reasonable

---

contrast, an 8 oz. bag of Lay's Classic Potato Chips, which are made with vegetable oil, costs approximately $3.99, or $0.50 per ounce.

[5] https://www.healthline.com/nutrition/9-avocado-oil-benefits (last visited Aug. 13, 2026).

[6] https://www.masterclass.com/articles/what-is-avocado-oil-a-guide-to-cooking-with-avocado-oil (last visited Aug. 13, 2026).

[7] *Id.*

consumers. Consumers may be allergic to, or have other reasons for not consuming, certain oils. Consumers of the Products reasonably expect to know what type of oil they are consuming.

43. The UC Davis researchers observed the significance of front-of-package oil claims, noting that "consumers may reasonably interpret front-of-package oil claims as signals of meaningful product differentiation," and that because all of the products studied "declared only a single edible oil in the ingredient statement and did not disclose blended oil formulations," "consumers would reasonably expect the named oil, particularly when emphasized through front-of-package claims . . . to be the primary lipid source of the product."[8]

44. Consumers purchased, and continue to purchase, the Products in part because the Avocado Oil Representation conveys the unequivocal message that the Products are made with avocado oil. Plaintiffs and Class members would have paid less for the Products, or would not have purchased them at all, if not for the Avocado Oil Representation. Therefore, Plaintiffs and Class members have suffered a financial injury in the form of paying a price premium that the Products command in the market as a result of Defendant's representation that the Products are made with avocado oil.

### D. UC Davis's Study Establishes That Defendant Has Either Diluted or Substituted the Avocado Oil in the Products—Thus Engaging in Economic Adulteration

45. The study, *Authenticity of avocado and olive oils used as ingredients in commercially processed foods* (the "Study"), conducted by researchers at UC Davis, reported the results of the first systematic study of whether avocado oil and olive oil used as ingredients in commercially processed foods are authentic.[9]

---

[8] Natalie Lopez-Alvarez, Xueqi Li, Benjamin Vizgordiski & Selina C. Wang, *Authenticity of avocado and olive oils used as ingredients in commercially processed foods*, 6 Applied Food Research 102389 (2026), https://doi.org/10.1016/j.afres.2026.102389.

[9] *Id.*

46. The UC Davis researchers selected commercially processed foods in three categories—chips, mayonnaise, and salad dressings—based on "consumer popularity and market availability."[10] Critically, the researchers included only products that "declared a single oil (e.g., avocado oil or olive oil) in the ingredient statement and did not list additional edible oils."[11] The Products satisfied that criterion and were included in the Study.

47. The UC Davis researchers analyzed 74 samples, representing 37 distinct commercial products, each of which was collected in two separate production lots. The Products were among the products tested.[12] In the product information accompanying the Study, Defendant's Avocado Oil Kettle Cooked Sea Salt Potato Chips are identified as Sample Nos. 13 and 14, and its Avocado Oil Maíz Sea Salt Corn Tortilla Chips are identified as Sample Nos. 15 and 16.

48. Samples were purchased in 2025 and 2026 from online sources and retail stores in California and stored unopened in the laboratory until analysis.[13] Two separate lots of each Product were collected and analyzed.[14] The Products were therefore subjected to analyses drawn from two independent production lots.[15]

---

[10] *Id.* at 2.

[11] *Id.*

[12] UC Davis, *Studied Products AFRES*, https://ucdavis.app.box.com/s/6ogs4l0ogplunooktwryr5b1m6k2xr9u/file/2347698985551?sb=/details.

[13] Lopez-Alvarez, *et al.*, *supra* note 8 at 2.

[14] *Id.*

[15] *Id.*

49. Researchers measured both the Products' fatty acid profile and sterol profile.[16] They classified samples by comparing the measured fatty acid and sterol profiles against the *Codex Alimentarius* Standard for Named Vegetable Oils (CXS 210-1999) and the Standard for Olive Oils and Olive Pomace Oils (CXS 33-1981), which are "intended to encompass expected natural variability" of fatty acid and sterol compositions in oil.[17]

50. The Study's classification criteria were deliberately conservative and generous to the products tested.[18] To account for analytical uncertainty, biological variability, and potential processing influences, the researchers tolerated minor deviations: a deviation limited to a single fatty acid or sterol marker, and "not exceeding 10% beyond established compositional limits," was not treated as sufficient to classify a sample as inconsistent, and such samples "were therefore considered consistent."[19] A sample was treated as merely "borderline"—and not inconsistent—where no more than two markers marginally exceeded that same 10% allowance without concordant deviations elsewhere. And when a sample was fully consistent in either fatty acids or sterols and borderline in the other, "it was considered consistent with authentic oil."[20] Only samples with "multiple deviations or patterns inconsistent with authentic reference profiles" were classified as inconsistent.[21]

51. **The Products failed both lots tested.** Researchers classified both lot samples as inconsistent with the composition of avocado oil.

---

[16] *Id.*

[17] *Id.*

[18] *See id.* at 3.

[19] *Id.*

[20] *Id.*

[21] *Id.*

52. The Products were not outliers. Of the 28 avocado oil–labeled chip samples the UC Davis researchers tested, 26—**93%**—were classified as inconsistent with authentic avocado oil. Across all avocado oil–labeled products in the Study, "[e]ighty-nine percent of avocado oil–labeled products exhibited compositional patterns inconsistent with authentic avocado oil."[22]

53. Principal component analysis of the fatty acid and sterol profiles "demonstrated clear separation between samples classified as consistent and inconsistent with their labeled oil claims."[23] "Many avocado oil–labeled samples clustered near" a vegetable-oil comparator sample "containing canola, corn, soybean, and/or sunflower oil, suggesting that the fatty acid profiles of those products are more consistent with polyunsaturated vegetable oil compositions than with authentic avocado oil."[24]

54. In short, the oil in the Products is not avocado oil, or at a minimum, not fully avocado oil. It bears the compositional signature of the cheap refined vegetable oils that avocado oil is supposed to replace.

55. The Study reveals a widespread issue in Defendant's manufacturing processes. Because the avocado oil substitution and/or dilution with cheap oils occurred at Defendant's manufacturing facilities, the absence of avocado oil and inclusion of undisclosed cheap oils affects all batches and lots of Defendant's Products, including Plaintiffs' purchases.

### E. The Frying Process Does Not Explain the Compositional Inconsistency

56. The UC Davis researchers anticipated and tested the obvious defense—that the compositional deviations they observed might be an artifact of cooking rather than evidence of

---

[22] *Id.* at 1, 3.

[23] *Id.* at 4.

[24] *Id.* at 6.

what oil went into the Products—and refuted it experimentally.[25]

57. The researchers prepared model products in the laboratory using retail avocado oils that they employed as reference oils, and whose pre-frying fatty acid and sterol profiles fell within every applicable Codex range.

58. The results were unambiguous. "For avocado oil subjected to frying [ ], absolute changes in major fatty acids were less than 0.6%." Cis-vaccenic acid—the key discriminatory marker for avocado oil authenticity—"decreased by only 0.1% following frying in both potato and tortilla chips." In other words, "[t]hese model product experiments indicate that typical frying and emulsification conditions do not substantially alter oil authenticity markers."

59. The magnitude of the deviations found in the Products cannot be explained by frying, by processing, or by natural variation. It is explained by the fact that the Products are not made with avocado oil.

**F. Defendant Knew or Should Have Known the Avocado Oil Representation Was False**

60. Defendant knows, or reasonably should know, that its labeling of the Products is misleading to consumers.

61. Adulteration of avocado oil has been publicly and repeatedly documented since at least 2020, when UC Davis researchers published the first report on the quality and purity of avocado oil sold in the United States and found that the majority of the samples tested were adulterated or of substandard quality.[26] A follow-up study published in 2023 found that approximately 70% of private-label avocado oils tested were "rancid or mixed with other oils."[27]

---

[25] *See id.* at 7.

[26] Hilary S. Green & Selina C. Wang, *First report on quality and purity evaluations of avocado oil sold in the US*, https://www.sciencedirect.com/science/article/pii/S0956713520302449.

[27] Tiffany Dobbyn, *Nearly 70% of Private Label Avocado Oil Rancid or Mixed With Other Oils*, https://www.ucdavis.edu/food/news/70%25-private-label-avocado-oil-rancid-or-mixed-other-

62. Defendant is a sophisticated food manufacturer that sources, formulates, and markets the Products, and that since January 2025 has been a wholly owned subsidiary of one of the largest food and beverage companies in the world. Defendant is aware of industry studies and trends, and is aware of the well-documented problem of adulteration in the avocado oil supply chain. Thus, Defendant knew or should have known that the Products do not contain avocado oil or are diluted with other cheaper oils.

## FED. R. CIV. P. 9(b) ALLEGATIONS

63. Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." To the extent necessary, as detailed in the paragraphs above and below, Plaintiffs have satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity:

64. **WHO:** Defendant Garza Food Ventures LLC d/b/a Siete Family Foods.

65. **WHAT:** Defendant's conduct was deceptive because it deceived consumers into believing that the Products were made with avocado oil and that avocado oil was the only oil used to make the Products. Defendant failed to accurately label the Products with an accurate statement of what kind of oils were used to make them. Defendant knew or should have known, as the manufacturer and marketer of the Products with superior knowledge of the composition of its Products, that this information is material to reasonable consumers. Yet Defendant misrepresented on the labeling of its Products that they contained avocado oil and/or were

---

oils; Hilary S. Green & Selina C. Wang, *Purity and quality of private labelled avocado oil*, https://www.sciencedirect.com/science/article/pii/S0956713523002372.

exclusively made with avocado oil and failed to ensure the Products in fact were made with avocado oil and/or exclusively made with avocado oil like Defendant warranted. Defendant knew or should have known that the Products were not made with avocado oil and/or were not exclusively made with avocado oil as labeled because Defendant is the manufacturer of the Products and has quality control testing protocols in place that should have alerted Defendant to the nature of the Products' actual oil content.

66. **WHEN:** Defendant engaged in this deceptive conduct continuously throughout the applicable statutory periods, including at the point of sale. Defendant's false and misleading Avocado Oil Representation was printed on the Products' front label and online sales pages for consumers to view and rely on.

67. **WHERE:** Defendant's misrepresentation was made on the Products' front packaging and on the back of the package's ingredients list and was thus viewed by every purchaser, including Plaintiffs, at the point of sale in every transaction. The Products are sold online and in brick-and-mortar stores nationwide, including in New York. Because all the Products at issue claim to be made with avocado oil, Defendant's dilution or substitution of avocado oil with other oils occurred in Defendant's manufacturing facilities and thus affected all production of the Products, including Plaintiffs' purchases.

68. **HOW:** Defendant misrepresented on the Products' front packaging that they were made with avocado oil when independent testing revealed that they contain oils different than the avocado oil represented. And as discussed in detail throughout the Complaint, Plaintiffs and Class Members read and relied on Defendant's misrepresentation regarding the avocado oil content before purchasing the Products and in choosing to purchase the Products.

69. **WHY:** Defendant misrepresented the avocado oil content of its Products. This representation was material in that it induced consumers like Plaintiffs to purchase the Products for their purported nutritional benefit while charging consumers a price premium. Accordingly, due to the representation, Plaintiffs and Class Members paid a price premium for the Products that they would not have, or would have paid substantially less for, had the Products not been diluted or substituted with oils other than avocado oil contrary to Defendant's express representation.

70. **INJURY:** Plaintiffs and Class Members were injured by Defendant's conduct in that they would not have purchased Defendant's Products, or would not have purchased them on the same terms, had they known that Defendant's Products did not contain avocado oil and/or did not exclusively contain avocado oil like Defendant expressly represented on the packaging.

## CLASS ALLEGATIONS

71. Plaintiffs bring this class action pursuant to Fed. R. Civ. P. 23, and all other applicable laws and rules, individually and on behalf of all members of the following classes (the "Nationwide Class" and the "New York Subclass," collectively the "Classes"):

72. **Nationwide Class:** All natural persons who purchased the Products in the United States within the applicable statute of limitations period.

73. **New York Subclass:** All natural persons who purchased the Products in the State of New York within the applicable statute of limitations period.

74. Excluded from the Classes are the following individuals and/or entities: Defendant and its parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting

out; the Judge and/or Magistrate Judge to whom this action is assigned and any member of such Judges' staff and immediate families; and Plaintiffs' counsel and Defendant's counsel.

75. Pursuant to Fed. R. Civ. P. 23(c)(1)(C), each of the above class definitions is a placeholder that may be altered or amended at any time before final judgment. As a result of additional information obtained through further investigation and discovery, the above-described Classes may be modified or narrowed as appropriate before the Court determines whether class certification is appropriate.

76. ***Numerosity.*** The proposed Classes are so numerous that joinder of all members would be impracticable. The Products are sold throughout the State of New York and the United States. The number of individuals who purchased the Products during the relevant time period is at least in the hundreds of thousands. Accordingly, Class members are so numerous that their individual joinder herein is impracticable. While the precise number of Class members and their identities are unknown to Plaintiffs at this time, these Class members are identifiable and ascertainable.

77. ***Existence and Predominance of Common Questions of Law and Fact.*** There are questions of law and fact common to the proposed Classes that will drive the resolution of this action and will predominate over questions affecting only individual Class members. These questions include, but are not limited to, the following:

a. Whether Defendant misrepresented material facts and/or failed to disclose material facts in connection with the packaging, marketing, distribution, and sale of the Products;

b. Whether the oil used to make the Products is avocado oil;

c. Whether Defendant's use of the challenged packaging, *i.e.*, the Avocado Oil Representation, constituted false or deceptive advertising;

d. Whether Defendant engaged in unfair, unlawful, and/or fraudulent business practices;

e. Whether Defendant's unlawful conduct, as alleged herein, was intentional and knowing;

f. Whether the Products commanded a price premium as a result of the Avocado Oil Representation, and if so, in what amount;

g. Whether Plaintiffs and the Classes are entitled to damages and/or restitution, and if so, in what amount;

h. Whether Plaintiffs and the Classes are entitled to injunctive relief;

i. Whether Plaintiffs and the Classes are entitled to statutory or punitive damages, and if so, in what amount; and

j. Whether Plaintiffs and the Classes are entitled to an award of reasonable attorneys' fees, interest, and costs of suit.

78. Defendant has engaged in a common course of conduct giving rise to violations of the legal rights sought to be enforced uniformly by Plaintiffs on behalf of the proposed Classes. Similar or identical statutory and common law violations, business practices, and injuries are involved. The injuries sustained by members of the proposed Classes flow, in each instance, from a common nucleus of operative fact—namely, Defendant's deceptive packaging and advertising of the Products. Each instance of harm suffered by Plaintiffs and Class members has directly resulted from a single course of unlawful conduct. Each Class member has been exposed to the same deceptive practice, as the packaging of the Products (a) bears the same

material Avocado Oil Representation, and (b) the Products do not meet this representation of fact. Therefore, individual questions, if any, pale in comparison to the numerous common questions presented in this action.

79. ***Typicality.*** Plaintiffs' claims are typical of those of the proposed Classes, as all members of the proposed Classes are similarly affected by Defendant's uniform unlawful conduct as alleged herein. Plaintiffs and members of the Classes purchased the Products, which are not made with avocado oil, in reliance on the representation and warranty described above, and suffered a loss as a result of those purchases.

80. ***Adequacy.*** Plaintiffs will fairly and adequately protect the interests of the proposed Classes, as their interests do not conflict with the interests of the members of the proposed Classes they seek to represent, and they have retained counsel competent and experienced in similar class action litigation. The interests of the members of the Classes will be fairly and adequately protected by Plaintiffs and their counsel.

81. ***Superiority.*** Because of the relatively small individual stakes at issue for each individual Class member, no Class member could afford to seek legal redress on an individual basis. Furthermore, individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. A class action is superior to any alternative means of prosecution.

82. Defendant has also acted, or failed to act, on grounds generally applicable to Plaintiffs and the proposed Classes, supporting the imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes. Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted on grounds generally

applicable to the Classes, making final injunctive and declaratory relief appropriate with respect to the Classes as a whole.

## CAUSES OF ACTION

### COUNT I
### Violation of New York's General Business Law § 349
### (On Behalf of Plaintiffs and the New York Subclass)

83. Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this Complaint.

84. This cause of action is brought pursuant to New York's Gen. Bus. Law § 349, *et seq.*, on behalf of Plaintiffs and the New York Subclass, who purchased the Products within the applicable statute of limitations against Defendant.

85. New York Gen. Bus. Law § 349, *et seq.* prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in th[e] state."

86. Defendant, in its advertising and packaging of the Products, made false, misleading, and deceptive representations and/or omissions about the oil used to make the Products, to mislead consumers into believing that the Products are made with avocado oil and/or made exclusively with avocado oil, when they are not.

87. Defendant's labeling and advertising of the Products led to, and continues to lead to, reasonable consumers, including Plaintiffs, believing that the Products are made with avocado oil and/or made exclusively with avocado oil.

88. Defendant used the Avocado Oil Representation with the intent to sell the Products to consumers, including Plaintiffs and the New York Subclass. The Avocado Oil Representation is false, and Defendant knew or should have known of its falsity. The Avocado Oil Representation is likely to deceive consumers into purchasing the Products because it is material to the average, ordinary, and reasonable consumer. Defendant knew consumers would

purchase the Products and/or pay more for them under the false—but reasonable—belief that the Products were made exclusively with avocado oil, when they are not. By placing the words "Made with Avocado Oil" prominently on the front of the package, Defendant proves that information about the oil used to make the Products is material to consumers.

89. As a result of its deceptive acts and practices, Defendant has sold thousands of units of the Products to unsuspecting consumers across New York. If Defendant had advertised the Products truthfully and in a non-misleading fashion, Plaintiffs and New York Subclass members would not have purchased them or would not have paid as much as they did for them.

90. Defendant's deceptive acts and practices are consumer-oriented and have a broad impact on consumers at large. The Products are sold at retail stores throughout the State of New York—including at Wegmans and Whole Foods supermarkets and through Amazon.com, where Plaintiffs Junot and Tsapelas purchased them—and the Avocado Oil Representation appears uniformly on the packaging of every unit of the Products sold in New York.

91. Plaintiffs and the New York Subclass reasonably and detrimentally relied on the material and false Avocado Oil Representation in that they purchased the Product.

92. Plaintiffs have standing to pursue this claim because they have suffered an injury-in-fact and have lost money or property as a result of Defendant's deceptive acts and practices. Specifically, Plaintiffs purchased the Products for their own personal use. In doing so, Plaintiffs relied upon Defendant's false, misleading, and deceptive representations that the Products were made exclusively with avocado oil, when they were not. Plaintiffs spent money on the transactions that they otherwise would not have spent had they known the truth about Defendant's advertising claims.

93. Plaintiffs and the New York Subclass have suffered injury in fact and have lost money or property as a result of and in reliance upon Defendant's deceptive advertising—namely, Plaintiffs and the New York Subclass lost the price premium associated with the Products they bought from Defendant.

94. As a direct and proximate result of Defendant's false, misleading, and deceptive representations and/or omissions, Plaintiffs and members of the New York Subclass were harmed in that they: (1) paid money for Products that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the Products they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Products they purchased had less value than if the Avocado Oil Representation were truthful. Accordingly, Plaintiffs seek to recover their actual damages or fifty (50) dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees, together with injunctive relief pursuant to N.Y. Gen. Bus. Law § 349(h).

## COUNT II
## Violation of New York's General Business Law § 350
## (On Behalf of Plaintiffs and the New York Subclass)

95. Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this Complaint.

100. Plaintiffs bring this claim individually and on behalf of the New York Subclass, who purchased the Products within the applicable statute of limitations against Defendant.

101. The New York False Advertising Law, codified at Gen. Bus. Law § 350, *et seq.*, prohibits advertising, including labeling, that "is misleading in a material respect."

102. Defendant violated § 350 when it advertised and marketed the Products through the unfair, deceptive, untrue, and misleading Avocado Oil Representation disseminated to the public through the Products' labeling, packaging, and advertising. These representations were

false because the Products do not conform to them. The representations were material because they are likely to mislead a reasonable consumer into purchasing the Products.

103. In making and disseminating the representations alleged herein, Defendant knew or should have known that the representations were untrue or misleading.

104. Defendant's Avocado Oil Representation was specifically designed to induce reasonable consumers, like Plaintiffs and the New York Subclass, to purchase the Products.

105. Plaintiffs have standing to pursue this claim because they have suffered an injury-in-fact and have lost money or property as a result of Defendant's deceptive acts and practices. Specifically, Plaintiffs purchased the Products for their own personal use. In doing so, Plaintiffs relied upon Defendant's false, misleading, and deceptive representations that the Products were made exclusively with avocado oil, when they were not. Plaintiffs spent money on the transactions that they otherwise would not have spent had they known the truth about Defendant's advertising claims.

106. As a direct and proximate result of Defendant's misconduct, Plaintiffs and members of the New York Subclass were harmed in that they: (1) paid money for Products that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the Products they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Products they purchased had less value than if Defendant's Avocado Oil Representation were truthful. Accordingly, on behalf of themselves and members of the New York Subclass, Plaintiffs seek to recover their actual damages or five hundred (500) dollars per violation, whichever is greater, three times actual damages, and reasonable attorneys' fees, together with injunctive relief pursuant to N.Y. Gen. Bus. Law § 350-e(3).

**COUNT III**
**Intentional Misrepresentation**
**(On Behalf of Plaintiffs, the Nationwide Class, and the New York Subclass)**

107. Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this Complaint.

108. Plaintiffs bring this claim individually and on behalf of the members of the Nationwide Class and New York Subclass against Defendant.

109. Defendant marketed the Products in a manner indicating that they are made exclusively with avocado oil when they are not. Therefore, Defendant has made misrepresentations about the Products on the Products' packaging.

110. The Avocado Oil Representation is material to a reasonable consumer because it relates to the quality and healthfulness of the Products. A reasonable consumer attaches importance to such representations and is induced to act thereon in making purchasing decisions with respect to the Products.

111. At all relevant times, Defendant knew that the Avocado Oil Representation was misleading. Defendant intends for Plaintiffs and other consumers to rely on the Avocado Oil Representation, as evidenced by Defendant intentionally and conspicuously placing it on the packaging of the Products, and by building the Products' advertising around it. In the alternative, Defendant acted recklessly in making the Avocado Oil Representation without regard to the truth.

112. Plaintiffs and members of the Classes have reasonably and justifiably relied on Defendant's intentional misrepresentations (*i.e.*, the Avocado Oil Representation) when purchasing the Products, and had the correct facts been known, would not have purchased them at the price at which they were sold in the market, or would not have purchased them at all.

113. Therefore, as a direct and proximate result of Defendant's intentional misrepresentations, Plaintiffs and members of the Classes have suffered economic losses and other general and specific damages, including but not limited to the amounts paid for the Products, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

**COUNT IV**
**Breach of Express Warranty**
**Uniform Commercial Code Law § 2-313**
**(On Behalf of Plaintiffs, the Nationwide Class, and the New York Subclass)**

114. Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this Complaint.

115. Plaintiffs bring this claim individually and on behalf of the members of the Nationwide Class and New York Subclass against Defendant.

116. Defendant, as the manufacturer, marketer, distributor, and/or seller of the Products, has expressly warranted on the Products' packaging that the Products are made with avocado oil, through the Avocado Oil Representation.

117. This representation about the Products is: (a) an affirmation of fact or promise made by Defendant to consumers that the Products are made with avocado oil; (b) became part of the basis of the bargain to purchase the Products when Plaintiffs and other consumers relied on the representation; and (c) created an express warranty that the Products would conform to the affirmation of fact or promise. In the alternative, the representation about the Products is a description of goods which was made as part of the basis of the bargain to purchase the Products, and which created an express warranty that the Products would conform to the Products' description.

118. Plaintiffs and members of the Classes reasonably and justifiably relied on the foregoing express warranty, believing that the Products did in fact conform to that warranty.

119. Defendant has breached the express warranty made to Plaintiffs and the Classes by failing to produce the Products in accordance with the Avocado Oil Representation, as expressly warranted on the packaging. The Products do not conform to the Avocado Oil Representation because they are not made with avocado oil and/or not exclusively made with avocado oil.

120. Plaintiffs and members of the Classes paid a premium price for the Products but did not obtain the full value of the Products as represented. As a direct and proximate result of Defendant's breach, Plaintiffs and members of the Classes were injured because they: (1) paid money for Products that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the Products they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Products they purchased had less value than Defendant represented. Had Defendant not breached the express warranty by making the false representation alleged herein, Plaintiffs and members of the Classes would not have purchased the Products or would not have paid as much as they did for them.

**COUNT V**
**Breach of Implied Warranty of Merchantability**
**Uniform Commercial Code Law § 2-314**
**(On Behalf of Plaintiffs, the Nationwide Class, and the New York Subclass)**

121. Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this Complaint.

122. Plaintiffs bring this claim individually and on behalf of the members of the Nationwide Class and New York Subclass against Defendant.

123. Defendant is a merchant with respect to the sale of the Products. Therefore, a warranty of merchantability is implied in every contract for the sale of the Products.

124. By advertising the Products with their current packaging, Defendant made an implied promise that the Products are made with avocado oil and/or are made exclusively with avocado oil. The Products do not, however, "conform to the promises . . . made on the container or label" because they are not made with avocado oil and/or not made exclusively with avocado oil. Plaintiffs, as well as other consumers, did not receive the goods as impliedly warranted by Defendant to be merchantable.

125. Therefore, the Products are not merchantable under the U.C.C. and Defendant has breached its implied warranty of merchantability with respect to the Products.

126. If Plaintiffs and members of the Classes had known that the Products were not made with avocado oil and/or were not exclusively made with avocado oil, they would not have been willing to pay the premium price associated with them, or would not have purchased them at all. Therefore, as a direct and/or indirect result of Defendant's breach, Plaintiffs and members of the Classes have suffered injury.

## COUNT VI
## Unjust Enrichment
## (On Behalf of Plaintiffs, the Nationwide Class, and the New York Subclass)

127. Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this Complaint.

128. Plaintiffs bring this claim on behalf of the Nationwide Class and New York Subclass.

129. To the extent required by the law, this cause of action is alleged in the alternative to legal claims, as permitted under Fed. R. Civ. P. 8(d)(2).

130. As alleged in detail above, Defendant's false and misleading representations caused Plaintiffs and the Classes to pay a price premium for the Products.

131. In this way, Defendant received a direct and unjust benefit at the expense of Plaintiffs and the Classes.

132. Plaintiffs and the Classes seek the equitable return of this unjust benefit.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the proposed Classes, respectfully prays for the following relief:

(a) Certification of this case as a class action on behalf of the Classes defined above, appointment of Plaintiffs as Class representatives, and appointment of their counsel as Class counsel;

(b) A declaration that Defendant's actions, as described herein, violate the laws described herein;

(c) A finding in favor of Plaintiffs and the Classes against Defendant on all counts asserted herein;

(d) An award to Plaintiffs and the proposed Classes of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiffs and the proposed Classes as a result of its unlawful, unfair, and fraudulent business practices described herein;

(e) An award of injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and the Classes, including, *inter alia*, an order prohibiting Defendant from making the Avocado Oil Representation on the Products unless and

until the Products are in fact made with avocado oil conforming to the applicable compositional criteria;

(f) An award of all economic, monetary, actual, consequential, and compensatory damages caused by Defendant's conduct;

(g) An award of statutory damages and treble damages pursuant to N.Y. Gen. Bus. Law §§ 349(h) and 350-e(3);

(h) An award of punitive damages, statutory damages, and/or monetary fines, consistent with permissible law and pursuant to only those causes of action so permitted;

(i) An award of nominal damages;

(j) An award to Plaintiffs and their counsel of reasonable expenses and attorneys' fees;

(k) An award to Plaintiffs and the proposed Classes of pre- and post-judgment interest, to the extent allowable; and

(l) Such further relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs, on behalf of themselves and the proposed Classes, hereby demand a jury trial with respect to all issues triable of right by jury.

Dated: September 9, 2026

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Neal J. Deckant*
Neal J. Deckant

Neal J. Deckant
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ndeckant@bursor.com

*Attorney for Plaintiffs*